# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

EDDIE D. LEE                                                              CIVIL ACTION

VERSUS                                                                    NO. 08-5180

BURL CAIN, WARDEN                                                         SECTION "D"(5)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations pursuant to 28 U.S.C. §636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that a federal evidentiary hearing is unnecessary. <u>See</u> 28 U.S.C. §2254(e)(2).[1] For the following reasons, it is recommended that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE.**

---

[1]Under 28 U.S.C. §2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. §2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. §2254(e)(2)(B).

I.  STATE COURT PROCEDURAL BACKGROUND

The petitioner, Eddie Lee, is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On April 18, 1996, Lee entered a plea of not guilty to the charge of possession of cocaine with the intent to distribute. On June 5, 1996, following trial by jury, Lee was found guilty of the lesser offense of simple possession of cocaine in Orleans Parish Criminal District Court.  Orleans Parish Criminal District Court Judge Leon A. Cannizzaro, Jr. originally sentenced Lee to five years imprisonment at hard labor.

On June 26, 1996, the State filed a multiple bill of information charging Lee as a fourth felony offender.  On July 10, 1996, Lee admitted that he was the same person named in prior convictions.  Judge Cannizzaro invoked the provisions of State v. Dorthey, 623 So.2d 1276 (La. 1993), finding the minimum sentence of life imprisonment under the Habitual Offender Law to be unconstitutionally excessive.  The district court vacated the previous five-year sentence and imposed upon Lee a thirteen-year term of imprisonment.  The Louisiana Fourth Circuit Court of Appeal, however, vacated the district court's sentence with instructions that Lee be resentenced in accordance with the Habitual Offender Law.  The state appellate court affirmed Lee's conviction.  State v. Lee, 699 So.2d 461 (La. App. 4th Cir.  1997).

In accordance with the state appellate court's directive, Judge Cannizzaro, on August 25, 1997, resentenced Lee to serve the balance of his natural life in prison at hard labor with credit for time served.[2]  On March 24, 1999, the Louisiana Fourth Circuit Court of Appeal affirmed Lee's resentencing.  State v. Lee, 735 So.2d 715 (La. App. 4th Cir. 1999).  On September 24, 1999, the Louisiana Supreme Court denied Lee's writ application.  State v. Lee, 747 So.2d 1115 (La. 1999).  Lee's conviction became final ninety days later, on December 23, 1999, when the ninety-day period for seeking a writ of certiorari from the U.S. Supreme Court expired and no application therefor was made.  See U.S. Sup. Ct. R. 13(1); Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003), cert. denied, 529 U.S. 1099, 120 S.Ct. 1834 (2000)(citing 28 U.S.C. §2244(d)(1)(A)).

On July 31, 2000, 220 days after his conviction had become final, Lee filed with the Orleans Parish Criminal District Court an application for post-conviction relief, contending that he received ineffective assistance of counsel by virtue of counsel's failure to object to Lee being tried before a jury while wearing prison attire.[3]  Thereafter, Lee raised supplemental claims in July, 2001,

---

[2]See State rec., vol. 1 of 3, docket master at p. 3.

[3]A copy of Lee's post-conviction application is contained in the State rec., vol. 1 of 3.  This July 31, 2000 filing date constitutes the date Lee signed his post-conviction application.  See Causey v. Cain, 450 F.3d 601, 604-607 (5th Cir. 2006), in conjunction with Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995) and Colarte v. Leblanc, 40 F.Supp.2d 816, 817 (E.D. La. 1999) ("mailbox" rule to be employed when ascertaining, in connection

arguing that his guilty plea to the multiple bill was not voluntary, that counsel was ineffective due to counsel's failure to withdraw his guilty plea to the multiple bill and failure to present evidence to mitigate the sentence or allow the court to deviate from the mandatory sentence and that his life sentence was excessive. Additionally, on an undetermined date in 2006, Lee filed a motion to correct illegal sentence arguing that La.R.S. 15:308, which provided for more lenient penalties, should have been applied retroactively. On August 23, 2007, Orleans Parish Criminal District Court Judge Darryl A. Derbigny granted Lee's post-conviction application, finding that Lee "had demonstrated that his counsel's performance was deficient and that this deficient performance prejudiced his defense...."[4] On December 6, 2007, pursuant to the State's writ application, the Louisiana Fourth Circuit Court of Appeal reversed the district court's decision. The state appellate court determined that Lee had failed to carry his burden of proving that he was prejudiced by counsel's failure to object to his prison clothing. State v. Lee, No. 2007-K-1233 (La. App. 4th Cir. Dec. 6, 2007) (unpublished opinion).[5] Pursuant

---

with determining timeliness of federal habeas application, when pro se prisoner filed Louisiana state pleading; generally, date prisoner signed his pleading is presumed to be applicable filing date under "mailbox" rule).

[4]A copy of Judge Derbigny's opinion is contained in the State rec., vol. 3 of 3.

[5]The Louisiana Fourth Circuit also determined that Lee's "other claims have no merit." A copy of the Fourth Circuit's unpublished opinion is contained in the State rec., vol. 3 of 3.

to Rule X, §5(a) of the Rules of the Louisiana Supreme Court, Lee had thirty days from December 6, 2007, until January 5, 2008, in which to timely seek writs from the Louisiana Supreme Court in connection with the state appellate court's December 6, 2007 adverse decision. <u>See</u>, e.g., <u>Butler v. Cain</u>, 533 F.3d 314, 317 (5th Cir. 2008). However, as evidenced by the postal meter stamp on the envelope, Lee's writ application to the Louisiana Supreme Court was not mailed until January 15, 2008, ten days after his January 5th deadline.[6] On November 10, 2008, the majority of the Louisiana Supreme Court denied Lee post-conviction relief, issuing a two-word decision, "Writ denied." <u>State ex rel. Lee v. State</u>, 993 So.2d 1209 (La. 2008). In dissent, however, two justices, without assigning reasons, stated that they would grant Lee's writ application. A third justice, Justice Johnson, provided that she

---

[6]A copy of the pertinent envelope is contained in the State rec., vol. 3 of 3. As noted earlier, in <u>Causey v. Cain</u>, 450 F.3d 601, 604-605 (5th Cir. 2006), the United States Fifth Circuit determined that the federal "mailbox rule" should be employed when determining the filing date of state court pleadings for purposes of determining the timeliness of a federal habeas petition. Under the "mailbox rule," the date a <u>pro</u> <u>se</u> prisoner's pleading is provided to prison officials for mailing is the date it is considered filed. <u>See</u> <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). Generally, a court will look to the date a prisoner signed his pleading as the earliest date the pleading could have been provided to prison officials for mailing. <u>See</u> <u>Colarte v. Leblanc</u>, 40 F.Supp.2d 816, 817 (E.D. La. 1999). In this instance, however, Lee did not date his writ application to the Louisiana Supreme Court. Accordingly, the Court will utilize the post-marked date of the pleading as Lee's filing date.

would grant the writ and provided substantive reasons supporting her opinion in this regard.[7]

## II.   <u>FEDERAL HABEAS PETITION</u>

On December 4, 2008, Lee filed the instant federal habeas corpus petition, raising as his sole claim for relief that trial counsel was unconstitutionally ineffective when he allowed Lee to proceed to trial in prison attire without raising an objection. (Rec. doc. 3, p. 11).  The State filed a response in opposition to Lee's petition, arguing that the petition should be dismissed as untimely filed.  (Rec. doc. 8, p. 1).

## III.  <u>GENERAL STANDARDS OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. §2254.  The AEDPA went into effect on April 24, 1996[8] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Lee's petition.

---

[7]Justice Johnson reasoned that Lee was entitled to post-conviction relief based upon his claim that he received ineffective assistance of counsel because under Louisiana law prejudice is presumed when a defendant appears before a jury dressed in prison garb. Lee's appearance in prison clothing "was not orchestrated by the defendant or his counsel", and counsel failed to object to Lee's appearance before a jury dressed in prison clothes. <u>Id.</u>

[8]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

IV.  <u>FACTS</u>[9]

On March 26, 1996, Sergeant Steven Gaudet was investigating
narcotics activity in the area of Erato and Saratoga Streets,
which has a documented history as a haven for narcotics
trafficking.  Sergeant Gaudet was assisted by Sixth District
officers Jake Schnapp and Brian Lampard.  Sergeant Gaudet
observed two black males in the 2100 block of Erato.  The
defendant was dressed in a green-hooded sweatshirt and was
recognized by Sergeant Gaudet as Eddie D. Lee, the defendant.
The other man was facing the defendant and in his extended hand,
was holding U.S. currency.  The defendant was about to accept the
currency when the men observed Gaudet's vehicle.  They parted and
began walking away.  Sergeant Gaudet notified Officers Schnapp
and Lampard of what he witnessed, giving them a description of
the defendant.  Those officers proceeded to 1310 Erato where
Officer Lampard exited the police car.  Officer Lampard proceeded
down an alley that is a known escape route for alleged drug
dealers.  He observed the defendant attempting to flee through
the backyard.  The defendant was looking over his shoulder while
slowing down.  When the defendant suddenly saw Officer Lampard,
he threw down a beige plastic bag.

---

[9] The recited facts are as found in the appellate court opinion
pertaining to Lee's direct appeal.  <u>State v. Lee</u>, 699 So.2d 461 (La. App. 4th
Cir. 1997).

Officer Lampard detained the defendant and radioed Sergeant Gaudet to notify him of the apprehension. After the defendant was turned over to Sergeant Gaudet, Officer Lampard returned to the rear of the house and retrieved a plastic wrapper containing seventeen rocks of crack cocaine. A search of the defendant's person incident to arrest uncovered $19.00 in U.S. currency.

At trial, all three officers identified the defendant's clothing, specifically a green sweatshirt and blue jeans. They also made in-court identifications of the defendant by reference to his OPP inmate shirt. The defense stipulated that the substance seized by Officer Lampard tested positive for cocaine. The defense presented no witnesses.

IV. <u>STATUTE OF LIMITATIONS</u>

The AEDPA requires a petitioner to bring his §2254 petition within one year of the date his conviction became final.[10]

---

[10]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the

<u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001). Lee's conviction became final on December 23, 1999, when the period expired for him to seek a writ of certiorari from the U.S. Supreme Court.

Therefore, under a literal application of the statute, Lee had until December 23, 2000, to file his federal habeas corpus petition, which he did not do. His petition must therefore be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005); <u>Fisher v. Johnson</u>, 174 F.3d 710, 713 (5th Cir. 1999), <u>cert. denied</u>, 531 U.S. 1164 (2001); <u>Cantu-Tzin v. Johnson</u>, 162 F.3d 295, 299 (5th Cir. 1998); <u>Davis v. Johnson</u>, 158 F.3d 806, 810 (5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is

---

exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. §2244(d).

prevented in some extraordinary way from asserting his rights.
Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848
(5th Cir. 2002).

Lee has not asserted any reason, and the Court can find
none, that might fit the restrictive boundaries of "exceptional
circumstances" described in recent decisions to entitle him to
equitable tolling.  See United States v. Wynn, 292 F.3d 226 (5th
Cir. 2002) (tolling warranted when defendant was deceived by
attorney into believing that a timely motion to vacate was
filed); Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999),
cert. denied, 529 U.S. 1057 (2000) ("A garden variety claim of
excusable neglect does not support equitable tolling."); Fisher,
174 F.3d at 715 (tolling not justified during petitioner's 17-day
stay in psychiatric ward, during which he was confined,
medicated, separated from his glasses and thus rendered legally
blind, and denied meaningful access to the courts); Cantu-Tzin,
162 F.3d at 300 (State's alleged failure to appoint competent
habeas counsel did not justify tolling); Davis, 158 F.3d at 808
n.2 (assuming without deciding that equitable tolling was
warranted when federal district court three times extended
petitioner's deadline to file habeas corpus petition beyond
expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides
for interruption of the one-year limitations period in stating

that "[t]he time during which a <u>properly filed application for</u> <u>State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. §2244(d)(2) (emphasis added). By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

<u>Flanagan</u>, 154 F.3d at 199 n.1; <u>accord</u> <u>Brisbane v. Beshears</u>, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); <u>Gray v. Waters</u>, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must conform with a state's applicable procedural filing requirements. <u>Williams v. Cain</u>, 217 F.3d 303, 306 (5th Cir. 2000). In <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 414 (2005) (quoting <u>Carey v. Saffold</u>, 536 U.S. 214, 226 (2002), the Court provided: "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of §2244(d)(2)."

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" <u>Carey</u>, 536 U.S. at 219-20; <u>Williams</u>, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The one-year AEDPA limitations period began to run in Lee's case on December 24, 1999, the day after his conviction became final. The limitations period ran uninterrupted for 220 days, until July 31, 2000, when Lee filed an application for state post-conviction relief. Prescription arguably remained tolled only until January 5, 2008, when Lee's time expired, under Louisiana Supreme Court Rule X, §5, for filing a writ application with the Louisiana Supreme Court seeking review of the state appellate court's adverse December 6, 2007 decision.

An untimely writ application to the Louisiana Supreme Court, rejected via a two-word opinion, "Writ denied", by the state high court, is generally deemed insufficient for purposes of interrupting prescription. The reasoning is that such a summary dismissal provides insufficient evidence to support a finding that the Louisiana Supreme Court, rather than denying the application as untimely, exercised its supervisory jurisdiction and considered the merits, thereby "convert[ing] an untimely and unsuccessful application into one that would be considered timely filed for the purpose of tolling limitations under AEDPA." Williams, 217 F.3d at 308 n.6.

In the instant matter, however, unlike the situation in Williams, evidence arguably does exist to support a finding that the Louisiana Supreme Court did, in fact, exercise its supervisory jurisdiction and considered the merits, thereby converting Lee's untimely writ application into one which should be considered timely for purposes of tolling prescription. The evidence at issue is Justice Johnson's dissent wherein she makes no reference to the alleged untimeliness of Lee's writ application, but rather, addresses the merits of Lee's ineffective assistance of counsel claim.

In Carey v. Saffold, 536 U.S. 214 (2002), a similar situation existed wherein that the state high court provided "mixed signals" with respect to the basis of its opinion denying

a state prisoner habeas relief.  In that case, Saffold filed his writ application with the California Supreme Court four and a half months after the state appellate court issued its adverse opinion.  In its opinion, the California Supreme Court "denied Saffold's petition, stating in a single sentence that it did so 'on the merits and for lack of diligence.'"  <u>Carey</u>, 536 U.S. at 217-218 (citation omitted).  On federal habeas review, the federal district court, based upon its finding that Saffold's untimely writ application to the California Supreme Court did not toll prescription, dismissed Saffold's federal habeas petition as untimely.  The Ninth Circuit Court of Appeals, however, found Scaffold's writ application to the California Supreme Court to be timely and, therefore, sufficient for purposes of tolling prescription.  The Ninth Circuit based its determination on the language in the California Supreme Court's single-sentence opinion which "showed the California Supreme Court had 'applied its untimeliness bar only after considering to some degree the underlying federal constitutional questions raised.'"  <u>Carey</u>, 536 U.S. at 218-219 (quoting <u>Saffold v. Newland</u>, 250 F.3d 1262, 1267 (9th Cir. 2000)).  The Ninth Circuit reasoned that the California Supreme Court's words, "on the merits" reflected that the state high court "could not have considered the petition too late, for, if so, why would it have considered the merits?"  <u>Carey</u>, 536 U.S. at 225 (citing <u>Saffold</u>, 250 F.3d at 1267).

14

In attempting to determine the meaning of the California Supreme Court's ambiguous opinion, the United States Supreme Court concluded that the Ninth Circuit's opinion placed too much emphasis on the words, "on the merits".  The Court reasoned that "the Ninth Circuit's apparent willingness to take such words as an absolute bellwether ... threatens to undermine the statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims."  Carey, 536 U.S. at 226 (citing Duncan, 533 U.S. at 179).  Nevertheless, the Court concluded that in the absence of a clear ruling from the California Supreme Court to the effect that Safford's writ application was untimely, "[w]e cannot say that the Ninth Circuit was wrong in its ultimate conclusion."  Id.

In the instant matter, the majority of the Louisiana Supreme Court, by virtue of its two-word opinion, "Writ denied", did not provide a clear ruling to the effect that it found Lee's writ application to be untimely.  The ambiguiousness of the majority's opinion, coupled with Justice Johnson's dissent which clearly addresses the merits of Lee's writ application, leads this court to conclude that Lee's writ application to the Louisiana Supreme Court may, in fact, have been "properly filed" for purposes of interrupting prescription.  The Court further notes that two other justices, albeit without written reasons, weighed in on the side of granting the writ.

If the time during which Lee's writ application was pending before the Louisiana Supreme Court, January 15, 2008 to November 10, 2008, is tolled, the instant federal habeas action is timely. Accordingly, the court shall proceed to address the merits of Lee's habeas application.

V.  MERITS

Lee argues that he was denied effective assistance of counsel by virtue of counsel's failure to object to the fact that he was tried before a jury while dressed in prison garb.

A claim of ineffective assistance of counsel is a mixed question of law and fact.  Boyle v. Johnson, 93 F.3d 180, 187 (5th Cir. 1996).  As such, this court may grant habeas relief only upon a determination that the state court decision rested on an unreasonable application of clearly established Supreme Court law to the facts of the case.  See Williams v. Taylor, 529 U.S. 362, 413 (2000).

The Louisiana Fourth Circuit Court of Appeal, in rejecting Lee's ineffectiveness claim, first set forth the applicable law regarding a petitioner's general burden of proving ineffective assistance of counsel.

In *State v. Batiste*, 06-0875, pp. 16-17 (La. App. 4 Cir. 12/20/06), 947 So.2d 810, 819, this court discussed the standard to be used to evaluate an effective assistance of counsel claim:

> The defendant's claim of ineffective assistance of counsel is to be assessed by the two-part test announced in *Stickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See* *State v. Fuller*, 454 So.2d 119 (La. 1984). The defendant must show that his counsel's performance was deficient and that this deficiency prejudiced him. The defendant must make both showings to prove counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La. App. 4 Cir. 1992). Counsel's performance is not ineffective unless it can be shown that he or she made errors so serious that he or she was not functioning as the "counsel" guaranteed to the defendant by the 6th Amendment of the federal constitution. *Strickland*, *supra*, at 686, 104 S.Ct. at 2064. That is, counsel's deficient performance will only be considered to have prejudiced the defendant if the defendant shows that the errors were so serious that he was deprived of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 693, 104 S.Ct. at 2068.

*Id.* at pp. 16-17, 947 So.2d at 819, quoting *State v. Mims*, 97-1500, pp. 44-45 (La. App. 4 Cir. 6/21/00), 769 So.2d 44, 72.

*State v. Lee*, No. 2007-K-1233, pp. 7-8 (La. App. 4 Cir. Dec. 6, 2007) (unpublished opinion).

Next, the state appellate court reviewed a petitioner's burden of proving ineffective assistance of counsel based upon

17

counsel's failure to object to his or her client proceeding to trial while dressed in prison garb.

> When a defendant asserts a claim of ineffective assistance of counsel for failing to object to the prison garb, he must carry his burden of establishing that his counsel's failure to lodge a timely objection prejudiced his case to the extent that the trial was rendered unfair and the verdict is suspect. There must be a reasonable probability that, but for defense counsel's failure to object to the prison attire, the result of the trial would have been different. State v. King, 00-2767, p. 6 (La. App. 4 Cir. 8/22/01), 804 So.2d 57, 61.

Lee at p. 8.

Thereafter, the Louisiana Fourth Circuit examined the facts of specific cases and how, based upon said facts, courts had adjudicated ineffective assistance of counsel claims. In one such case, State v. Martin, 624 So.2d 448 (La. App. 4th Cir. 1993), the court conceded that counsel's performance, in failing to object to his client being tried while wearing prison clothing, was deficient. The court, however, determined that the defendant was not prejudiced by counsel's deficiency, reasoning:

> Mr. & Mrs. Karzenowski, the victims, testified that they were robbed at gun point in their hotel room. Jewelry and money were stolen by two robbers. When the defendant was apprehended immediately after the robbery by the hotel security guard, he had the money, some of the jewelry and a pistol. Mr. & Mrs. Karzenowski identified the money and the jewelry. Mrs. Karzenowski positively identified the defendant minutes after the robbery, in a line up and at trial.
>
> The defendant did not show prejudice or demonstrate that the verdict would have been different

18

> had defense counsel objected to the prison clothes.
> Mrs. Karzenowski positively identified the defendant as
> the armed robber twice before trial.  The stolen items
> were in the defendant's possession.  <u>Stickland</u> has not
> been satisfied.  This assignment lacks merit.  <u>Martin</u>,
> 624 So.2d at 451.

<u>Lee</u> at pp. 8-9.

In a similar case, <u>State v. Winding</u>, 787 So.2d 385 (La. App. 4th Cir. 2001), defendant claimed that counsel was ineffective by virtue of his failure to object to defendant wearing prison clothes at trial due to the fact that his clothing "was a focal point because witnesses identified him in court by his clothing." <u>Lee</u> at p. 10.  The Louisiana Fourth Circuit, however, rejected defendant's argument, reasoning:

> The defendant was gagged a very short time and
> attention was not focused on his prison clothing.
> Counsel's performance was not defective under
> <u>Strickland</u>, 466 U.S. at 668.

> Regardless, under <u>Strickland</u>, 104 S.Ct. at 2052,
> counsel's errors were not so serious that the defendant
> was deprived of a fair trial.  There was no reasonable
> probability that, but for defense counsel's errors, the
> result of the trial would have been different.  The
> evidence of guilt is overwhelming.

> The fourteen year old victim who was raped in her
> bed named the defendant when police officers arrived.
> The victim knew the defendant because he visited the
> apartment she shared with another teenager and an older
> lady.  The victim identified the defendant shortly
> after his arrest and in court.  Her teenage roommate,
> who accidentally interrupted the rape, saw the
> defendant as he ran from the apartment.  She gave his
> name to the police and identified him in court.
> <u>Winding</u>, 00-0364, p. 4, 787 So.2d at 388.

<u>Lee</u> at p. 10.

In a third case, <u>State v. King</u>, 804 So.2d 57 (La. App. 4th Cir. 1993), defendant argued that his conviction should be overturned because of the incompetence of his counsel in failing to object to the fact that he proceeded to trial while wearing identifiable prison clothing.  The court found that defendant had failed to show he was prejudiced as a result of counsel's incompetence, reasoning:

> Here, the evidence of the defendant's guilt was overwhelming.  The defendant was caught in the act of robbing John Lawrence, who identified the defendant as the perpetrator.  The intended victim was able to grab the gun and to wrestle with the defendant until several neighbors/bar patrons were able to call the police and hold the defendant until the officers arrived.  In light of the overwhelming evidence of the defendant's guilt, he has not met his burden of proof.  <u>King</u>, 00-2767, p. 6, 804 So.2d at 61.

<u>Lee</u> at 11.

Based upon the above, the Louisiana Fourth Circuit Court of Appeal determined that the state district court erred in granting Lee post-conviction relief, reasoning:

> Like <u>Winding</u> and <u>King</u>, there was clear evidence of the relator's guilt.  Sgt. Gaudet testified at trial that he interrupted what he believed to be a drug transaction; he recognized the black man about to accept the currency as Eddie D. Lee.  When the two men saw the sergeant's vehicle, they parted.  Sgt. Gaudet gave Officers Lampard and Schnapps a description of Lee, and those officers proceeded to an alleyway that was a known escape route for drug dealers.  Officer Lampard testified that he saw Lee attempting to flee

through a backyard.  When Lee saw Officer Lampard, he threw down a tan plastic bag.  Officer Lampard detained Lee, who was subsequently turned over to Sgt. Gaudet. Officer Lampard then retrieved the plastic bag, which contained rocks of crack cocaine.  All three officers testified and identified Lee.  In light of the overwhelming evidence against Mr. Lee, it appears that the trial court should have concluded that the relator did not carry his heavy burden of showing that the trial was unfair and the verdict suspect; he did not show that there was a reasonable probability that, but for counsel's failure to object to his wearing prison garb at trial, the result of the trial would have been different.

We acknowledge that a possible distinction between this case and those discussed above relates to the fact that in this case on the day of trial the relator had changed into the clothes in which he had been arrested when the state informed Mr. Whittaker that the clothes were needed for identification at trial.  The state therefore took the civilian clothes from Mr. Lee, and he was forced to go to trial in prison garb.  According to the relator's quotes from Mr. Whittaker's testimony in pleadings filed below (to which the state stipulated), trial counsel discounted the state's argument that he allowed the relator to stand trial in prison attire as part of his strategy.  The relator alleged that right before going to trial in prison attire, counsel said that the court was running late and he should have notified the court earlier that he wanted civilian clothes to wear at trial.  Whether Mr. Whittaker's conduct was deficient because he did not object to prison garb, ask for civilian clothes earlier, ask for a continuance, or request a recess in order to obtain civilian clothes for the relator to wear,[11] the fact remains that the relator was tried in prison attire.  Even if Mr. Whittaker's conduct were considered deficient, in order to obtain relief, the relator had the burden of proving that he was prejudiced, that the errors were so serious that he was deprived of a fair trial.  To carry his burden, the relator had to show that there was a reasonable

_____

[11]We note that relator had put on and intended to wear to trial the civilian clothes in which he had been arrested; those clothes were needed by the state for identification purposes.  Such civilian clothes were not a good choice for trial.

probability (a probability sufficient to undermine
confidence in the outcome) that, but for counsel's
unprofessional errors, the result of the proceeding
would have been different.

Ultimately, the issue therefore remains whether
the relator proved prejudice.

We find that the trial court erred by granting the
application for post-conviction relief and ordering a
new trial.  We reverse the trial court's ruling, and
reinstate the conviction.

<u>Lee</u> at pp. 11-13.

This court finds that the Louisiana Fourth Circuit Court of

Appeal's decision that Lee failed to satisfy his burden of proof

in connection with his ineffective assistance of counsel claim,

does not represent an unreasonable application of <u>Strickland</u>,

<u>supra</u>, to the facts of this case.  Accordingly;

## **<u>RECOMMENDATION</u>**

It is hereby **RECOMMENDED** that the petition of Eddie Lee for

issuance of a writ of habeas corpus under 28 U.S.C. §2254 be

**DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed

findings, conclusions, and recommendation in a magistrate judge's

report and recommendation within ten (10) days after being served

with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed

factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that

such consequences will result from a failure to object. <u>Douglass</u>
<u>v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)
(en banc).

New Orleans, Louisiana, this <u>22nd</u> day of <u>September</u>,
2009.


ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE